Good morning, Your Honors, and may it please the Court, Deputy Federal Public Defender Jonathan Amanoff on behalf of the appellant, Kenneth Clark. Your Honors, I'm certainly mindful that it's the rare case that meets the Shalhoub Actual Innocence Standard. This is that extraordinary case because Kenneth Clark is actually innocent of this crime. There are three points I'd like to stress this morning. First, I'd like to start with the standard of review. Then I'd like to go to the District Court's finding that Mr. Monroe Thomas, a state star witness, was pressured to recant his trial testimony. And finally, I'd like to highlight the contradictions in the District Court's order, where the District Court essentially found that Mr. Clark's eyewitnesses were not credible, notwithstanding all those same reasons applied to the state star witness, Monroe Thomas. Beginning then with the standard, and I would like to reserve two minutes for rebuttal. Beginning with the standard of review, the parties are generally in agreement that the standard of review is de novo with respect to the ultimate question as to whether Mr. Clark has established actual innocence. The thing that we disagree on is the standard of review that is applicable to the District Court's underlying credibility determinations. I have acknowledged the Larson v. Soto decision, which in a footnote mentions that clear error applies. However, House v. Bell is directly contradictory to that position, and that's a Supreme Court case. Specifically in that case, the Supreme Court reviewed testimony from a evidentiary hearing in the District Court in Tennessee, and indicated that the standard was de novo. And then they applied de novo review in overturning those credibility determinations, and I think that that controls here. Regardless, even if the Court disagrees with me on that point, we still have established actual innocence under any standard of review. I'd like to move on to this issue of whether Monroe Thomas was forced or threatened to recant his trial testimony. Now, the District Court clearly erred when finding that Monroe Thomas had stated that he was threatened post-trial to recant his trial testimony. That's not what he testified to, and he was quite explicit about that. What he said was, while he was still living in San Bernardino, which indisputably was pre-trial, a threat was communicated to him to not testify against Mr. Clark at trial. Now, we certainly dispute that that ever occurred, but assuming that it did, that was pre-trial. Mr. Monroe Thomas then testified against Kenny Clark, and there was no threat. That was the end of it. The District Court misinterpreted that to mean that he had been threatened to recant his trial testimony. Now, there was a very lengthy exchange between the Magistrate Judge and Monroe Thomas about pressure. Specifically, Monroe Thomas was asked four different times whether he was pressured to recant his trial testimony. He said no. Eventually, on the fifth time, he was pushed, and what he ultimately said was he did feel a little bit of pressure to help Kenneth Clark, but this was not done in a bad way, and he certainly was not scared. The District Court's real error here was the law requires that the court look at the circumstances surrounding a recantation, and the District Court failed to look at the three substantive witnesses that we put on at the federal evidentiary hearing who all established that Monroe Thomas freely and voluntarily recanted his trial testimony. The state has not disputed those three witnesses' credibility, and there's no adverse finding about those witnesses' credibility. What specifically happened was Monroe Thomas contacted his niece and had his niece put him in touch with Mrs. Clark. This was two months after the trial, and Monroe Thomas then recanted his testimony to her. When he then became unavailable, and what happened was his phone number became disconnected, Ms. Clark then traveled to Ohio, met with him personally, and asked him to sign a declaration memorializing what he had told her. She brought a witness with her who was a relative of Mr. Thomas's, and they have all testified that there was no undue pressure, and he simply memorialized what he had freely and voluntarily said to her. Okay. Counsel, even if the District Court was wrong about whether Mr. Thomas was pressured, the court gave a lot of other reasons for disbelieving his recantation. So what, even if we were to agree with you that it was wrong on that point, what are we to do with the rest of its analysis? Well, Your Honor, I think that was the primary reason the District Court found him not credible. I mean, there was other things like... There were a lot of inconsistencies, even just within the evidentiary hearing in his testimony. I think one thing that the District Court found was that Monroe Thomas sort of went back and forth on what specifically he was recanting. The one thing that he has not recanted, and no one seems to dispute this, is what they were doing in the parking lot that night. And he's been very explicit that he did, in fact, go to the parking lot that night to fence a stolen floor buffer, and he then got into a heated exchange with a drug dealer. The juror knew none of this, and had the juror known that this violent interaction took place before Mr. Clark even arrived at the scene, they would have been left with two reasonable alternatives as to who committed this murder. Monroe Thomas didn't see the murder, so all the jury knew was that he'd gotten into this car accident with Candace Clark, and hearing that no one else would have a possible motive to harm Monroe Thomas and his friend Rosales, they were left with only one conclusion. It had to be Candace Clark. But had they known that this interaction had occurred, and the interaction was so scary to them that they jumped in their car to get out of the scene as quickly as they could, and that's what caused this car accident, they would have been left with a very different impression about what happened that night. I would like to highlight some points about our substantive eyewitnesses. We put on four different eyewitnesses at this evidentiary hearing who all established that the drug dealer I'm referring to, who we've called Buddha throughout this process, that Buddha actually committed this murder. The district court found for various reasons that our eyewitnesses were not credible, but those same reasons all applied to Monroe Thomas. I'd just like to highlight a few of those. The big one seems to be forthcomingness. Our witnesses were all criticized for not coming forward earlier and saying what they had seen. Forthcomingness is not a factor that in and of itself goes to credibility. The Supreme Court's been very clear on that in McQuiggins versus Perkins, and this court has been clear on that in Larsons versus Soto. Also, Mr. Clark cannot personally be responsible for bringing in these other witnesses. Excuse me, he's not personally responsible for their delay. He's responsible for once he finds these witnesses, bringing them to court. That's what happened here. Once he became aware that these witnesses had information to offer, we promptly brought each of them in to testify at the federal evidentiary hearing. I would also like to point out that Mr. Thomas hasn't been forthcoming in this case at all. He did not approach the police about what he had seen. He was actually found by the police themselves. The California Court of Appeal described him as a flaky, reluctant, and uncooperative witness, who then actually fled the state of California before this trial. The district court also faulted our witnesses for having prior convictions. Prior convictions in and of themselves don't necessarily point to credibility. In fact, none of our witnesses had convictions for crimes of moral turpitude, and one of our witnesses had no criminal convictions whatsoever. This is contrasted with Monroe Thomas, who had a prior felony conviction for welfare fraud. The district court never reconciled that contradiction. The district court also faulted our witnesses for claiming to be sober on the night that this occurred. Each of them offered reasons why they were sober at the time that this crime occurred. The district court didn't reconcile that with the fact that Monroe Thomas claimed that both he and Rosales were sober at the time this occurred, notwithstanding the fact that he admitted that they'd spent the day drinking and using drugs, and Rosales had a BAC of .17 at the time of his death. Just two last quick points. There's been a lot of focus on perceived connections between our eyewitnesses and the Clark family. The district court doesn't seem to reconcile that with the fact that this is a really small community, and everyone has some connection to each other. I mean, Monroe Thomas himself is distantly related to Mrs. Clark and was of time on minor inconsistencies in these witnesses' testimony, specifically things like how much damage was done to Mr. Clark's car, or how many people were in the parking lot. I've maintained that no reasonable juror would use those minor inconsistencies to discount these witnesses' testimony, and Monroe Thomas' testimony at trial was extremely inconsistent on several points, specifically the theft of the stolen floor buffer. And unless there's further questions, I'd like to reserve the balance. Thank you.  Good morning, Your Honors. May it please the Court, Ronald Jacob, Deputy Attorney General for Respondent. For more than eight years following his conviction in 2005 for the murder of Ms. Rosales, Mr. Clark filed pleadings at every level of the state courts, the district court and this court, maintaining that an unknown biker was the real killer. Sometime prior to the 2016 evidentiary hearing, Mr. Clark decided to try out a new alibi. Now his story is that a very well-known neighborhood drug dealer, Duval Thomas, also known as Buddha, he was the real killer. And as counsels stated, this was a very small, close-knit community. So everyone knew who Buddha was. Unfortunately for Mr. Clark, this new alibi with his 11th hour witnesses did not fare well. The court found all of them not to be credible, and at the hearing, Mr. Monroe Thomas affirmed his trial testimony in all material respects. For example, that Mr. Hold on. Except one, though. I think at trial he said he saw the shooter actually pull the trigger, and this time he says he didn't see them. No, Your Honor. I respectfully disagree with that. At trial, he said that he was going into the store, heard the gunshot turned, and then saw Mr. Clark standing in the parking lot. He no longer saw Mr. Rosales, and Mr. Clark was looking at him. So it's our position, he was consistent on that point. He was consistent on Mr. Clark being the only one who had a gun, that Mr. Clark was the one who punched him, Monroe Thomas, in the face. Mr. Monroe Thomas also testified that he was pressured after the trial to help Mr. Clark, and this colloquy, which we recite on pages 28 to 29 of the Pele's brief, clearly shows that this of this interchange between Judge Gandhi and Mr. Thomas. And this is exactly why the clear error standard applies to these types of hearings. I'd like to briefly address House v. Bell. What happened in House v. Bell is that the state of Tennessee made the same mistake that the factual determination with the legal conclusion. And the state in that case basically argued that if the clear error standard is not overcome, that's the end of the inquiry. The schlup gateway is not met. And the U.S. Supreme Court said, no, that overgeneralizes the standard. There are two sides to this, the factual determination and then the ultimate legal conclusion. In addition, in House v. Bell, the district court used the wrong legal standard, and its findings were rather conclusory. They weren't supported in the record. None of those problems happened here. Well, counsel, could I ask you a question about the standard applied by the magistrate judge? Because under schlup, the standard is whether the petitioner has to show that no reasonable juror would have found him guilty beyond a reasonable doubt. And I counted, I think, 18 times in the magistrate judge's opinion. He said, in light of this fact, a juror could have found him guilty, which seems like it's more like the Jackson against Virginia standard, which schlup pretty clearly says is not the standard. So what are we to do with that? Well, I don't think that's an incorrect statement of the law. That's really the other side of the coin. Well, no, I mean, there are a lot of... To say that a reasonable juror could have found someone guilty, I mean, could and would are different, right? You can have a situation in which a reasonable juror could have found him guilty, but it is still the case that no reasonable juror would have found him guilty, right? I mean, there's a gap between those two. Well, potentially, but that's really neither here or there because that question is for this court. That's the ultimate legal conclusion. What the district court is owed deference on are its factual findings. And in Jones v. Taylor, this court recognized this dichotomy between factual determinations, which are done by district court at an evidentiary hearing, and the ultimate legal conclusion if the Schlupp gateway has been met. And in fact, specifically on page 1245 of Jones v. Taylor, this court cites the clear error standard for the factual determination. And then the court goes on to say it's unsettled whether abuse of discretion or de novo applies to the court did not need to decide that question since the petitioner failed under either standard. So therefore, it's our position that it's respondent's position that the court got it right in Larson v. Soto, that there is this dichotomy of the factual determinations and then the legal conclusion. And the clear error standard applies to the factual determination. And in this case, Mr. Clark cannot show that the district court's credibility findings were clear error. And therefore, the district court's judgment dismissing the petition as untimely should be confirmed. Unless the court has any further questions, we'd submit. Thank you, counsel. Thank you, Your Honors. Just a couple of quick points in response. There's no inconsistency in Mr. Clark's story. He has consistently maintained that an unknown biker was the one who committed the crime. That unknown biker is Duval Thomas. Once we found four eyewitnesses who were there and actually saw the murder, they identified Duval Thomas as this person. There's no inconsistency in Monroe Thomas not knowing who Duval Thomas was. Monroe Thomas actually testified at the federal evidentiary hearing that he hadn't been up to this specific area in a long time. And although there was a hundred people in the parking lot, according to him, he only knew two of those people. One was Mr. Clark, and the other one was the handyman, Robbo, that he tried to sell the buffer with who was in the company of Duval Thomas that night. He hasn't affirmed his trial testimony in all material respects. He's maintained that there was a second person in the parking lot with the gun that night, and he's also maintained that he did steal this floor buffer and he did get into this violent interaction with Buddha, which is something he lied about to the jury at the time of trial. I think House is very clear that De Novo applies. I mean, Justice Roberts specifically said, we have factual findings about reliability of the new evidence in the record, factual findings the majority disregards without finding clear error. They very clearly applied De Novo review to those factual findings. Finally, Your Honor, I just would like to point out the similarities between this case and House. There was significantly more evidence tying House to the murder in that case. The only evidence of Mr. Clark's possible guilt here is Monroe Thomas, a witness who's all over the place who didn't see the shooting, and now four new witnesses who described in the exact same way how this murder actually occurred. I don't see how any reasonable juror could listen to all of this and believe that there is proof beyond a reasonable doubt that Mr. Clark committed this crime. So I respectfully ask the Court to remand this case to the District Court with the finding that Mr. Clark has established actual innocence and allow us to litigate the merits of Mr. Clark's habeas petition. Thank you, Your Honor. Thank you, counsel. Thank you both for your argument. This matter is submitted.
judges: Owens, Nelson, Miller